

RECEIVED

JUL 28 2022

CLERK, U.S. DISTRICT COURT
ANCHORAGE, AK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SEAN T. PIERCE, | Civil Action No. 3:22-CV-00176-JMK |
|     *Plaintiff,* | |
| vs. | COMPLIANT FOR INJUNCTIVE AND DECLARATORY RELIEF; AND TEMPORARY AND LONG TERM PERMANENT RESTRAINING ORDER TO STOP/PREVENT DEPRIVATION OF CIVIL RIGHTS GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES |
| STATE OF ALASKA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATEWIDE SERVICE | |
|     *Defendant* | |

*It was better for 100 guilty men to escape justice than for one innocent man to be falsely imprisoned.*

*-Benjamin Franklin*

*It was better that 100 innocent men be imprisoned, than for one guilty man to escape justice.*

*- The Alaska Legislature (1993-present)*

*What is a thing; what is its nature?*

*-Marcus Aurelius, The Meditations*

COMPLAINT INTRODUCTION

I.

JURISDICTION

Jurisdiction of this court is granted pursuant to Title 28, United States Code, Section 1343 (a)(3). This action is authorized by Title 42, United States Code, Section 1983. This court has jurisdiction to grant the requested injunctive relief pursuant to 28 U.S.C. §§ 2201 and §§ 2202. The rights, privileges, and immunities sought to be secured in this action are rights, privileges, and immunities guaranteed by the Fifth Amendment to the Constitution of the United States, U.S. Const. amend. V, § 3. And Plaintiff brings this action on his own behalf and on behalf of all other persons similarly situated Pursuant to FRCP 23(a)(1)(2)(3)(4).

II.

VENUE

Sean T. Piece
PO Box 9061
Anch. AK. 99517
(907) 887-9105
snpio9@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. I

Case 3:22-cv-00176-JMK   Document 1   Filed 07/28/22   Page 1 of 32

In this action, plaintiff, a pro se litigant, seeks declaratory and injunctive relief against Alaska state Department of Public Safety by and through its employees, officers, and administrators, who, pursuant to Alaska law, have or will have deprived plaintiff of constitutionally guaranteed rights, privileges, and liberties under color of law. At all times transactions, that give rise to actions injuctable under the requisite laws of the United States, have all occurred in the State of Alaska, within the jurisdiction of the Federal District Court for the District of Alaska. This is a proceeding for a preliminary and a permanent injunction enjoining defendants from: under threat of incarceration, extracting confessional information from those convicted of certain sex offenses listed in AS 11.63.10 –which plaintiff is as he has been convicted under AS 11.61.127, which is an offense listed under AS 12.63.10. Therefore, as a person effected, plaintiff has standing to bring this action. The State of Alaska is a party to the action pursuant AS 44.80.010(1)(2)(3). Plaintiff requests a bench trial.

III.

COMPLAINT: FIRST CAUSE OF ACTION

BACKGROUND

Commensurate with FRCP 8(a)(2) and in harmony with Supreme Court holdings' in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2nd 868, and pursuant to FRCP 10(c), so that in order to: support plaintiff's allegations on a foundation of facts; moving the pointer from "possibility to plausibility" as opposed to mere "labels and conclusions;" such that plaintiff avoids the risk of "formulaic recitations of the elements of a cause of action" and "naked assertions devoid of further factual enhancements (Id. Iqubal at 1949):

Plaintiff incorporates by adoption: the acts; and if applicable, failures to act; and omissions, if any; of the agents/employees of the Alaska Department of Public Safety; who are charged with duty (debere inevitabilis) arising from their oath of office; to uphold and protect the U.S. Constitution; which by that charge are to give care to all rights of all people; thereby plaintiff incorporate, adopts and cites by reference the facts presented in plaintiffs Memorandum in Support of his Application for Temporary Restraining Order and his personal Affidavit, into count one infra.

Chief amongst these acts, committed by the Alaska Legislature, is enacting AS 12.63.10, and carried into force by the those who are agents. Meaning to protect the citizens of Alaska, the legislature: transmogrified

Sean T. Prece
PO Box 9061
Anch., AK, 99517
(907) 887-9105
seprece@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of United

Case 3:22-cv-00177-JMK   Document 1   Filed 07/28/22   Page 2 of 32

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. 1

traditional modes of protection. The legislature's passing into law of AS 12.63.10 and AS 11.56.835(b) is: an existential attack on those effected; which is meant to pervert the logical quantifier –that is, the mode with which we can say there exists an object that possesses a characteristic- such that persons effected possess not the quantity or the quality of being a human; but of wraiths, specters, and demons; wrought not out of a sense of justice; but of vengeance; political scapegoatism; persecution: as did Nero the Christians; with malevolent intent (First Amendment opinion, not an allegation to be proven).

On or about January 15th, 1994 the Alaska Legislature –introduced and sponsored by representatives BARNES, Ulmer, Phillips, Nordlund, Porter, Olberg, James, B.Davis, Green, Sanders, Toohey, Mackie, Parnell, Navarre, Bunde, and senator Halford and Taylor— House Bill (HB) 69, titled: "Sex Offender Registration, An Act relating to registration of and information about sex offenders and amending Alaska Rules of Criminal Procedure 11(c) and 32(b)." This bill was: introduced in the house on January 15th, 1993, "first read;" subsequently the Senate introduced SB 109; on February 11th, 1993, "first read". After: discussion in committees; from January 15th, 1993 to May 12th, 1994; the joint houses of the Alaska legislature passed (House April 19th, 1994, Senate April 20th, 1994) HB69; and was signed into law by the then Governor on May 13th, 1994; passing as: CHAPTER 41 SLA 94, with an effective date of August 10th, 1994, and encoded as Alaska Statue 12.63.

### Count I

From the effective date to present, the Alaska Department of Public Safety, Division of Statewide Services, has administered AS 12.63.10. Pursuant to that enabling act's mandate (coded at AS 12.63.10 (b)(1)(A)-(I) and (c), the Division of Statewide Services, created and has made available Registration Forms, whose nomenclatures are: 12-299-61, -62 and -69. These forms require those under alleged duty to disclose what amounts to a complete dossier on said person(s), as generally described in AS 12.63.10 (b)(1)(A)-(I) and (c); including name, phone number, address, place of employment, online internet communications identifiers, etc.

These forms are required to be signed by the requisite individuals under penalty of perjury. The State of Alaska has used these forms in prosecutions; they have been proffered as proof of-of-fact, and have been declared as such by the Alaska Court of Appeals and the Alaska Supreme Court. They have been touted as the gold standard; celebrated in triumph, satisfying superlatively the mens rea elements of 11.56.835(a)(2)

Sean T. Preec
PO Box 9061
Anch. AK. 99517
(907) 887-9105
ssprec6@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend. XIV, sec. 1

and AS 11.56.840.[1]  Under threat of incarceration, those who have an alleged duty are forced to fill out these forms, and then they are used in court to secure convictions based on charges levied under AS 11.56.835(a)(2) and or AS 11.56.840; and after conviction under said statutes, they are incarcerated and subject to probation and parole.  These forms are therefore signed confessions; this is violation of U.S. Const. amend. V, clause 3

## IV.

## STATEMENT OF THE ACTION REQUESTED

Plaintiff makes prayer for relief in the form of 1.) Declaratory relief pronouncing the use of the forms described supra, and in fact any mode or method of acquiring data consistent with information described in AS 12.63.10 (b)(1)(A)-(I) and (c): through any instrument(s), as violating plaintiffs' rights under U.S. Const.; and or Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I; 2.) Preliminary and, after adjudication on the merits, permanent injunction is also sought to enjoin defendants from continuing to mandate the afore mentioned information gathering in the manner and method described. And thereby: subject plaintiff(s) to AS 12.63.10 through the use of these forms; or any other method and or instrument that cause the described out-comes; or achieves the exact equivalent goal(s); are constructively equivalent to, and or et al any method or scheme; with which the described violation of a person's right to not be a witness against one's self and subjected to a bill of attainder, is accomplished or realized; not here imagined or conceived of at this time.

## V.

## REQUEST FOR PRELIIMINARY RESTRAINING ORDER (TRO)

### Part I

Pursuant to Federal Rules of Civil Procedure 65(b)(1)(A)(B), plaintiff herby requests a Temporary Restraining Order (TRO) restraining defendants from forcibly subjecting plaintiff, specifically, to filling out these forms as previously described.

## VI.

## MEMORANDUM IN SUPPORT OF REQUEST FOR TRO

It is a violation of AS 11.56.840 if a person, knowing they had a duty to do so, did not file the initial registration form, did not file annual or quarterly registration forms, declare changes of address, creation or

Sean T. Pierce
PO Box 9061
Anch. AK, 99517
(907) 887-9105
snpcc6@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I

use of electronic communicators, [et al other changes, etc.]. It is a violation of 11.56.835 if a person violates Sec. 11.56.840, and (1) the person has been previously convicted of a crime under this section or AS 11.56.840 or a law or ordinance of this or another jurisdiction with elements similar to a crime under this section or AS 11.56.840. Also, it is established [without due process of law], that under AS 11.56.835:

(2)(b) In a prosecution under (a)(2) of this section, the fact that the defendant, for a period of at least one year, failed to register as a sex offender or child kidnapper, failed to file the annual or quarterly written verification, or changed the sex offender's or child kidnapper's address and did not file the required notice of change of address, is prima facie evidence that the defendant intended to escape detection or identification and, by escaping detection or identification, to facilitate the person's commission of a sex offense or child kidnapping.

It is a violation of due process to: statutorily mandate that; as a matter of perfected fact; not registering when one had the alleged duty; after one year; a person's mens re is created for them by the legislature; and also actus reus in that: ipso facto, you were trying to avoid detection of [your] commission of a sex crime; but where the government is not required to meet a burden of proof; nor are they required to produce any evidence of any kind, just simply point to a statute prima-fascia, that creates a presumption. In this manner, the legislature: has conjured into existence facts they want to be true; but may or may not be true; and has given those alleged behaviors enhanced force of weigh of evidentiary value, with artificially magnified indicia of reliability; in terms of the process of presenting evidence in a criminal trial; and assigning meaning to theoretical facts when instructing juries.

This makes section (b) of 11.56.835 a bill of attainder, in that it violates U.S. Const. Article I, sub. X and the confrontation clause of the Sixth Amendment of the U.S. Constitution, et al constitutional guarantees, by presenting evidence in court with no source to cross or otherwise examine. Also, because of the sum total of the statutory constructions; the presumption of innocence as fixed in Alaska's Rule of Evidence (AROV) 303(1) & (2) is reversed, because the legislature has violated the separation of powers doctrine, by creating, without due process, a virtual judicial notice of fact(s). AROV 303 states:

"(1) Presumptions Directed Against an Accused. In all criminal cases when not otherwise provided for by statute, by these rules or by judicial decision, a presumption directed against the accused imposes no burden of going forward with evidence to rebut or meet the presumption and does not shift to the accused the burden

Sean T. Price
PO Box 9061
Anch. AK, 99517
(907) 887-9105
ssprice9@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article 1, clause X Article V, clause 2 and clause 4; Amend. XXV sec. 1

of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast. However, if the accused fails to offer evidence to rebut or meet the presumption, the court must instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact, but no mention of the word "presumption" shall be made to the jury. If the accused offers evidence to rebut or meet the presumption, the court may instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact, but no mention of the word "presumption" shall be made to the jury.""

(2) Presumptions Directed Against the Government. In all criminal cases when not otherwise provided for by statute, by these rules, or by judicial decision, a presumption directed against the government shall be treated in the same manner as a presumption in a civil case under Rule 301.

 (b) Prima Facie Evidence. A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a presumption within the meaning of this rule."

The Alaska Rules of Evidence secure the rights to due process, from an evidentiary standpoint. AROV 201 encodes due process by stating: "(b) General Rule. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  It is mandatory when: "Upon request of a party, the court shall take judicial notice of each matter specified in subdivision (b) if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request."[2]

AROV 202 Sec. (d) states: "With Request—Mandatory. Upon request of a party, the court shall take judicial notice of each matter specified in subdivision (c) if the requesting party furnishes sufficient information and has given each party notice adequate to enable the party to meet the request." AROV 203states:

(a) Determining Propriety of Judicial Notice. Upon timely request, a party is entitled to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of proper notification, the request may be made after judicial notice has been taken. In determining the propriety of taking judicial notice on a matter or the tenor thereof, the judge may consult and use any source of pertinent information, whether or not furnished by a party.

Sean T. Piece
PO Box 90651
Anch. AK. 99517
(907) 887-9105
stepie4@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4: Amend. XIV, sec. I

Case 3:22-cv-00173-JMK   Document 1   Filed 07/28/22   Page 6 of 32

(c) . . . Judicial notice of any matter of law falling within the scope of Rule 202 shall be a matter for the court and not the jury.

A person charge under AS 11.56.835(2) is deprived of their right, by the inclusion of sec. (2)(b) in 11.56.835, to have judicially noticed facts or law determined by an adversarial hearing as described by the rules of judicial notice –wherein it is made manifest that: if the state were the requesting party, the state would bear the burden of proving the alleged facts under the standard of review as mandate by AROV 201(b)(1) & (2). The rule(s) traces its roots in the confrontation clause; however, section (2)(b) of 11.56.835 creates a statutorily created, virtual "judicial notice-of-fact" for the court and the parties: by fiat. In this way, legislative facts are converted to adjudicative facts, by fiat. Not even to mention that adjudicative facts are outside the scope of permissible facts "noticeable" by the court. A court cannot take judicial notice, and then instruct a jury that it has been determined as a matter of fact by the court (outside jury purview): a defendant is guilty.[3]

This is accomplished, however, by the nexus confluence and the effect thereof of AS 11.56.835(2)(b) and AROV 303(b).[4] This is how the presumption of innocence against a defendant is reversed, because: the nexus confluence of, and the interplay between, AS 11.56.835(2)(b) and AROV 303(b) (hereinafter known as the "aggregate") create a presumption;[5] that shifts to the defendant a necessity imperative to make a motion for an hearing; where then the defendant bears the burden of disproving either the legislative created "adjudicative" facts, or proving the unconstitutional nature of 11.56.835(2)(b).[6]

This violates AROV 303, where it states: ". . . a presumption directed against the accused imposes no burden of going forward with evidence to rebut or meet the presumption and does not shift to the accused the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast." The imposition by fiat of the "aggregate" creates a presumption via Rule 303 (b): "A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a presumption within the meaning of this rule."

It is axiomatic this shifts the presumption of innocence to presumption of guilt; by causing any defendant to go forward with facts, "out of fear of non-persuasion," to rebut the burden-shifting presumption created by the "aggregate." [7] Where in reality, due process demands the state's evidence must not lack such a quantitative and qualitatively nature as not to prejudice defendant: wherefore it does not cause a defendant

Sean T. Piece
PO Box 9061
Anick, AK. 99517
(907) 887-9105
saptoc4@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4: Amend. XIV, sec. I

fear of not offering a defense; or in this case, fear of not attempting to rebut the bill of attainder levied against them by the legislature. The Court in *Sandstorm v. State of Montana* held:

"As in *Morissette*[8] and *United States Gypsum Co.*,[9] a conclusive presumption in this case would "conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime," and would "invade [the] factfinding function" which in a criminal case the law assigns solely to the jury."

> The instruction [judicially noticed facts] announced to David Sandstrom's jury may well have had exactly these consequences. Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and "ordinary consequences" of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove "beyond a reasonable doubt . . . every fact necessary to constitute the crime . . . charged," *Bachellar v. Maryland*, 397 U.S. 564 (1970)] 397 U.S., at 364, 90 S.Ct. at 1073, and defendant was deprived of his constitutional rights.[10]

It is to any reasonable mind, that: the existence of the "aggregate;" the effect it may surely have on the outcome of a trial, is coercion; and it would compel anyone of a reasonable mind; too feel they would have to petition for the return of their right to be presumed innocent; lest the accusation levied by the "aggregate," supported by no witnesses or tangible evidence; would fatally prejudices a defendant. Normally, the non-existence of facts (meaning introduction of accusations by the prosecution, that someone did or did not do something, but where no evidence of any kind –witnesses, documents, etc. - is introduced in support) would normally never be allowed to be substituted for adjudicative facts. But the operation of the "aggregate" does exactly that.

Or, at the very least, the fiat facts will be used at sentencing in order to "capture" imagined sexual behavior, where the record would not record one single supported accusation, only the legislature's fantasy wish list contained in AS 11.56.835(2)(b). This is because Alaska sentencing laws takes their leave from Federal sentencing guidelines; that is, conditions of probation and parole must have a reasonable relationship to demonstrated behaviors. And a sentencing hearing is not like a trial; the standards of due process (reasonable

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

relationship) where the introduction of evidence is concerned are even lower than the civil jury standard of: preponderance of the evidence.

These things notwithstanding, the construct plaintiff has created, and the posited operational gerrymandering by the legislature and outcomes as a result, may be more or less fluid than in reality. But one thing is for sure, the operational construct of the "aggregate" will exist in the trial matrix some were and in somehow, and it will materially prejudice any criminal defendant.

### Part II

Since failure to register is a misdemeanor and then a felony punishable by incarnation, the police powers of the State of Alaska (and its monopoly on the use of force and violence) are used to coerce persons with alleged duty to register, into filling out and signing the forms, and then they are used as "evidence (of a communicative nature)" against them in courts of law. Thus the coercive component is prosecution and as a result: incarceration if said persons fail to fill out these forms; this makes them signed confessions under the threat of prosecution and incarceration. And in this way threaten the harm of prison if one does not act as a witness against one's self.

In the case of State v. George Shayen III (3AN-10-7789 CR), in order to demonstrate and thereby satisfy AS 11.56.835(a)(2) and AS 11.56.840's (mens rea) element, State of Alaska introduced Shayen's past report forms, codified with the mentioned nomenclature(s), as described supra. He was ultimately convicted, based on these form's evidentiary value as determined by the Alaska Superior Court, of violating AS 11.56.835(a)(1), and AS11.56.840(a)(3)(B)(i). On appeal, the Alaska Court of Appeals upheld his conviction; however, violation of the right against self-incrimination was not an issue in this case. But, the case's rules of law and the court's reasoning(s) are salient.

George Shayen had moved from the Brother Francis Shelter to Valley of the Moon Park. Shayen was by definition, homeless. In this case, Shayen (by and through his lawyer) proffered as [affirmative] defense that: as 12.63.10 did not specifically define a "residence;" since Shayen was homeless; and did not have a fixed residence; then therefore he was not subject to the statute's reporting requirement, of change of address (AS 12.63.10 (c)). Therefore Shayen did not fill out and file the requisite forms. After a bench trial, the Superior Court found Shayne guilty; on appeal, the Alaska Appellate Court noted: "the State provided ample evidence to prove this element (mens rea, knowing and aware of an [alleged] duty.[11]

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend XIV sec. I

The Court's discussion on this matter is on point, that the forms as evidence were dispositive of the issue [whether or not mens rea was demonstrated], and left no one of a reasonable mind in doubt he was guilty. Shayen argued the state had provided "insufficient evidence [to support the mens rea element of AS 11.56.840(a)(1)]." The court, [pro] forma, stated the standard of review:

> When we review a claim that the evidence presented in a criminal trial is insufficient to support the defendant's conviction, we view the evidence (and all reasonable inferences to be drawn from that evidence) in the light most favorable to upholding the verdict. The question is whether the evidence is 'adequate to support a conclusion by a reasonable minded person that there was no reasonable doubt as to the [defendant's] guilt;" (the court citing *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981)).[12]

Further establishing legal standards of review, the court stated the states burden of proof: "to convict Shayen of failing to report his change of residence to the Department of Public Safety, the State had to prove that Shayen was aware of the circumstances that triggered this duty to report a change of residence, and that he knowingly refrained from performing that duty." The court cited Shayen's corpus of forms he had submitted in the past, as proof that met [or exceeded?] the benchmark established by the standards of review; established by the Court of Appeals as stated by it. The court went on to note: "The State also presented evidence tending to prove that Shayen understood these requirements.

> On many occasions, Shayen submitted forms notifying the Department of a 'change of residence' when he moved to different locations. Shayen submitted these forms even when his new location was not a traditional address. . . . And on one of his annual registration forms, Shayen reported that his residence was "camping in trees by the Valley of the Moon [park]." "Based on this evidence, a reasonable mind could conclude that Shayen knew that his move from Brother Francis Shelter to the camp at Ship Creek was a "change of residence" that he had to report.[13]

After being convicted, Shayen then filed a reconsideration of the Court of Appeal's decision; the court ordered some corrections of the record, but upheld his conviction, on the grounds elucidated. The court noted: ". . . the Superior Court correctly referred to the State's duty to prove that 'Shayen was aware of the circumstances that triggered his duty' to file a written notice that he had changed his address, and that he knowingly failed to file the notice."[14] Plaintiff posits that without the subject forms, as described earlier, the

Sean T. Piece
PO Box 9061
Anch. AK. 99517
(907) 887-0105
anpo4@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. 1

state could not have proven Shayen guilty. When Shayen was filling out these forms, he was doing so under threat of prosecution and prison. It is axiomatic that the state has presented these forms in other prosecutions. This is so obvious, unless we are going to say George Shayden III is the only person ever charged with, and convicted of, failure to register, and he is the only persons where at his trial these forms were introduced – that it is again manifest that this is a ubiquitous practice, amounting to a standard operating procedure; and in any prosecution the state will present such forms.

Therefore; given the absoluteness of this fact; and the fact that if plaintiff is made to continue to fill out and submit these forms; they will exist in the world; were the state, hypothetically if it felt compelled to charge plaintiff, or any other of the class, at some time in the future these forms would be used against [us] in a court of law. Therefore, plaintiff does not have to first be subjected to criminal proceedings before he has standing to challenge, and receive the requested relief, because creation of the form's content is on-going; in support of plaintiff's claim, he invokes the doctrine of Fear Based Standing.[15]

The facts are clear, the probability of conviction without the aforementioned forms, conviction based on these forms' highly probative nature: exists in the realm of not the probable, but arguably the objectively near impossible (there is in fact, mathematically, no such thing as impossibility; things are either statistically probable or improbable. The threshold between is subjectively intuitive.). That is if we are talking about the infamous "reasonable man standard."

It is that standard where: perhaps even arriving at its door's threshold with facts, of a kind or another; where those facts may or may not have been subject to the crucibles' algorithm; and thus perhaps even achieving an essence; endowed with a nature of peer consensus; but wherein there only "lies" an intuitive notion of reason, relegated to the realm of the ethereal; its shadow, as Plato understood, can only be viewed, not its incorporeal reality. But, at its door's threshold: one can only cross based on an intuitive quantum leap in order to dispel doubt. The reasonable man standard is a Sword of Damocles; it is the instrument by which the state can prevail, where it is proven to be in violation of its own professed legal and or moral standards, without constitutional justification; and impose its will with an act Deus Ex Machina summarily pronouncing (against weight of fact and presence) someone, something, or a situation is reasonable by fiat; thorough its superior monopoly on the use of force.[16]

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
anpiece@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend. XIV, sec. I

The cornerstone, "the rock" upon which is founded plaintiff's argument for relief, is, the Fifth Amendment of the U.S. Constitution, the Fourteenth Amendment as the Fifth is applied to the states, and its conjugate in the Alaska Constitution, because they are absolute, eminently and imminently fundamental. To conceptualize from a landmark a priori, <u>Miranda v. Arizona</u>, et al other cases of relevance is/are invoked. The Warren court in that case decided the 5th Amendment was/is so ever present as positive law, it required, and it still is required, that police officers must inform you of your rights under this amendment: before attempting questioning.

Positive law is where the law is presumptively in existence, and is leading rather than following; in other words, every person is entitled to the 5th's immediate effect, and the burden is upon the state to inform one of its immediacy.[17] To emphasis its pervasiveness and visceral effervescence, when it is established that any information, especially a confession, is obtained where officers did not inform, the "good faith" exception to the fruit of the poison tree doctrine does not protect and preserve the state's right to such evidence. Offices cannot claim they "in good faith," failed to *Mirandize* a suspect. During a prosecution, a person does not have to retro-actively beg for their 5th amendment rights.

The normal predicate(s) whereby the Fifth Amendment can be invoked is/are not applicable in this situation. This is because the sex offender registry system (statute) is unique in the annals of law and legislation; perhaps it only is comparable to the Selective Service Act, where men 18-30 ysld. who fail to register, and in fact also inform the gov. of change of contact info., could be prosecuted as such. However, there has not been a prosecution under this act since 1986; and, apparently the requirement is being repealed in 2023.

Any notion that: a person must be first subject to custodial interrogation; or be a witness under oath and be subject to examination; where the witness reasonably believes the answer(s) to any question asked of them would incriminate them; and the statements used in a subsequent prosecution; or they are subject to questions put forth in an administrative (statutory) investigation or procedure; are the only (but not limited to) situations where one has the right to assert the Fifth amendment; and if they disclose without invoking, are not considered to be coerced: do not apply to the instant situation.[18] This is because every person who is subjected to any regulatory system, other than the previous mentioned selective service law (where in 2023 there will be no requirement), has the option of not engaging in an activity under regulation: where a decision to not engage in said system (and abstain from the regulated activity) does not result in prison.[19]

Sean T. Price
PO Box 90061
Anch. AK, 99517
(907) 887-9105
stprice@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. I

However, persons allegedly required to register, pursuant to sex offender registration laws: cannot opt. out; well, they can, but they will be prosecuted. Therefore, plaintiff posits that whenever a person is faced with filing registration forms in response to triggering events; they are under virtual custodial interrogation. And: the forms are "questions directed at them by policing agencies;" the questions on the registration forms mentioned supra (the forms are issued and or they are delivered to registrants, by the Department of Public Safety, a policing agency) are directed at alleged registrants while they are in virtual custodial custody; because if they do not answer and submit the forms; they will be prosecuted under AS 11.56.835 and or .840.[20]

This circumstance is distinguishable from the bright line established in *Minnesota v. Murphy*, where the Supreme Court affirmed that one needs to be confronted with questioning by police agencies, or agents engaged in statutory inquiry, under custodial circumstances, or be a witness in a trial or statutory inquiry, before the Fifth Amend. is "self-executing." [21] In this case a probationer was required by the terms of his probation to meet with probation officer, and tell the truth when asked questions eliciting information. The probation officer had received information that the probationer had committed a rape and murder before the conviction that had landed him on probation in a subsequent case. The officer asked him about it, and the probationer admitted to it; his statements were later used against him to obtain a conviction of murder and rape. The Supreme Court of the U.S. held that meeting with a probation officer in the probation officer, even though the officer was seeking inculpatory statements, and the totality of surrounding circumstances: did not create the coercive conditions of custodial interrogation as prescribed by *Miranda*.[22]

The Court found that:

> Nor was respondent deterred from claiming the privilege against self-incrimination by a reasonably perceived threat of revocation of his probation so as to render the privilege self-executing. The legal compulsion to attend the meeting with the probation officer and to answer truthfully the questions of the officer who anticipated incriminating answers is indistinguishable from that felt by any witness who is required to appear and give testimony, and is insufficient to excuse respondent's failure to exercise the privilege in a timely manner. Whether a subjective or objective test is applied, there is no reasonable basis for concluding that Minnesota attempted to attach an impermissible penalty to the exercise of the privilege.[23]

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights,
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4: Amend. XIV, sec. 1

Case 3:22-cv-00165-MK   Document 1   Filed 07/28/22   Page 13 of 32

Sean T. Piece
PO Box 9061
Anch, AK, 99517
(907) 887-9105
stpro49@gmail.com

The instant situation can be distinguished from *Murphy*. The Court reasoned that the record did not demonstrate the State of Minnesota "attempted to attach an impermissible penalty to the exercise of the privilege;" meaning there was neither a statute nor regulation stating probation would be revoked if a probationer invoked his right in the face of question not pertaining to conditions of probation; nor was there a record of Murphy's probation officer threatening to initiate proceedings to revoke if he invoked the right.

However, in the instant situation, the state is threatening to prosecute if a registrant does not fill out the forms; the state is not telling any registrant the forms will be used as evidence against them; and if the state feels it has cause, it charges and uses the forms in prosecution. In this way, the state is depriving a registrant of the experience of custodial interrogation, where in fact the registrant is undergoing custodial interrogation but does not even know it.[24] And, this qualifies as "attaching a penalty."

Registrants are in custodial interrogation because they are being forced to fill out forms that are going to be used against them, but they are not being told they could be used against them in a court of law. This would be paradigmatically equivalent to a police officer, who: suspects a person of criminal activity; and without a warrant shows up on the suspects doorstep; representing himself as being shot (not telling the suspect he is a police officer); to the point the officer uses fake blood and manufactures a convincing wound; so the suspect will render care; and in that process invite the officer in. Then, the officer claims he saw incriminating evidence in "plain view;" and the court upholds that.

The Court also stated *Murphy* was not in custody because he was not under arrest, and was free to leave the probation office, as he eventually did; therefore he was not under custodial interrogation. Constructively, registrants are in "virtual" custodial interrogation when confronted with filling out forms in response to triggering events because if they don't fill out and submit them, they will be prosecuted and sent to prison, and, they only are able to opt. out under threat of prosecution and imprisonment, which is equivalent to not having a right to opt out.

In *Murphy* the Court pointed to the fact that a probationer knows the circumstances of their probation, because of terms being presented to them, so being on notice, a probationer was not subjected to *Miranda's* unfamiliar circumstance condition produced by detention; registrants are not even aware of their situation because they are not being informed as such. It is instructive were the *Murphy* court stated: "we have never

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
aspro6@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 2 and clause 4; Amend. XIV, sec. I

adopted the view that a witness must "put the Government on notice by formally availing himself of the privilege" only when he alone "is reasonably aware of the incriminating tendency of the questions."[25]

Well, in the instant circumstance: the state is the only one who knows the forms and their content will be/are being used against registrants; and it would be a ridiculous statement to say; a registrant could reasonably deduce and or foresee the resultant use of the forms; based on a common knowledge approach to the intricate nature of the rules of evidence and the law surrounding this issue; just from filling out a form. This is certainly not the ordinary circumstance.[26]

This especially true where: the state bears the burden of proving mens rea, "knowingly;" the interplay of the this requirement in terms of the state's duty to present qualitative and quantitative evidence such that the lack therefore does not prejudice defendant; the legal acumen necessary to understand the forms' evidentiary value for these purposes; understanding of the creation of thresholds; by which tiers of compounding evidence work to overcome presumptions; and are overcome by such things as indicia of reliability (and all indices and facets of evidence that work to elevate or detract from that concept), etc.

Plaintiff's point is, registrants do not even enjoy the reduced standards applied to probationers and parolees, from a due process standpoint. Therefore, being forced to register is more akin to a draconian form of probation; where registrants do not even get to know the terms (use of the forms in prosecutions). This is especially salient when one considers the other and most important holding in Murphy, for this point; where the court held:

> State may insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that required answers may not be used in criminal proceeding and thus eliminates threat of incrimination, and nothing in Federal Constitution would prevent state from revoking probation for a refusal to answer that violated express condition of probation or from using probationer's silence as one of number of factors to be considered by finder of fact in deciding whether other conditions of probation had been violated.

This holding has been universally understood to mean that a probationer has no Fifth Amendment right to invoke against allegations he or she violate terms of probation or parole; even to the extent that failure to deny and or offer evidence to rebut the accusation: can be used to draw the conclusion violation has taken place.

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article 1, clause X Article V, clause 2 and clause 4; Amend. XIV, sec. 1

Case 3:22-cv-00166-MK   Document 1   Filed 07/28/22   Page 15 of 32

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
snpic4@gmail.com

Registrants have been effectively placed under this probation circumstance. The state may: coerce him or her into filling out the forms; but not tell them it will be used against them; and by using the form as evidence in court; where the forms and their information is obtained under both threat of incarceration and possibly actual probation and parole; deprives registrants of information that would make it: reasonable to anyone that filling out the form; and submitting them; puts them in peril of incriminating themselves; whereby they would be under the "classic threat;"[27] but then consider them to have waived their right by not invoking it; against a threat they don't even know exists; such that constructively registrants have been told they have no right to refuse to supply evidence that will be used against them; just as in parole and probation, under the ruling in *Murphy*: except not in revocation hearings, but in criminal trials.

Except that a probationer's silence (by performance, not admitting; which would be analogues to registrant invoking by performance, "opting out" by not filling out the forms, and or verbally invoking the right to remain silent) is only used against them as an inference of guilt; a registrant refusing to fill out and submit the form (if it was determined to be a constructive waiver) would be punished with prosecution and incarceration, and not afforded the classic "prohibition on use of statements obtained under duress." The circumstance is that a registrant has no right to not incriminate themselves, by being deprived of key information that would create a reasonable and perceivable threat.

The U.S. Supreme Court has held that documents that contain [or possess a quality of] incriminating information, are privileged and protected by the Fifth Amendment, in that the act of turning them over to gov. authorities is equivalent to oral communicative speech;[28] especially if those documents were created under duress.[29] Consequently, it is no blur in the mind to: recognize that not filling out and filing a form (an act of opting out); and the result being prosecution and being sent to prison; describes the fear engendered in and experienced by, custodial subjects through custodial interrogation in a police station; as described by *Miranda* as unconstitutionally coercive; and by that case, the *Miranda* Warning emerged because custodial interrogation was/is coercive. Therefore, faced with filling out and submitting form, where if one does not do so the police will come to your home and drag you to prison, is as coercive as custodial interrogation in a police station: even if someone is sitting in front of their own computer in their own home.

Not to mention, non-registrants in custodial custody do not face charges if they invoke their right to remain silent. It is reasonably perceivable that if a registrants in this virtual custodial custody, sent in a form where

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend. XIV, sec. 1

Case 3:22-cv-00176-MK   Document 1   Filed 07/28/22   Page 16 of 32

Sean T. Piece
PO Box 9061
Anch. AK. 99517
(907) 887-9105
ssproel@gmail.com

on in was simply stated: that because the state is using these forms against them in courts of law, it violates their right against self-incrimination to be made to fill out the forms: such a registrant would surely be arrested for "knowingly" refusing to register, and be made to fight it out in court, including years of appeals. It is obvious then that a new version of custodial custody has been created, and there is no previous precedent in U.S. history (perhaps arguably the Japanese internment of WWII).

Even those who did not register for Selective Service, if they were arrested and charged, face no charges for failing to turn themselves in and sign a confession. And, if they had never registered, there would be no forms for which to similarly prove they did not register.    It is obvious that this system (12.63.10, 11.56.835, .840) is clearly and convincingly: a cognizable "substantial hazards of self-incrimination that [is] real and appreciable, not merely imaginary and unsubstantial."

The Damoclean Sword hangs over ever registrant, even in their own homes. This is singular unique; and no previous notion of traditional custodial interrogation, and or being subject to administrative investigation, et al other applicable cirumstances, as being required predicates to invoke the 5th: do not apply. The triggering event is: as has been unequivocally demonstrated by the case of George Shayen III, the forms and their content will be, and have been, used against them in a court of law,[30] as proof they knew they had an alleged duty, and thus proving mens rea. The prosecution can prove any other element of 11.56.840; but it cannot secure a conviction without proving "knowingly."

The violation of plaintiff's et al other's similarly situated Fifth Amendment right is compounded by the fact that the United States Supreme Court upheld challenge to Alaska's sex offender registration law on the grounds that it was regulatory, and not criminal.[31] Therefore, being a regulatory scheme, operating and maintaining 12.63.10, where an essential component of that system is coercing participants into signing forms, and them using coerced confessional evidence in a trial, and failing to inform them as such: violates the Supreme Court's decision in *Lefkowitz v. Turley*, 414 U.S. 70, 78 (1973)[32], where the Court declared that persons cannot, as a requirement of participation in a regulated system,  be subject to a condition that they waive their right against self-incrimination in order to participate.

This case and the instant case can be partially distinguished; in *Turley* the State of New York required waiver of right against self-incrimination as a precursor to receiving, keeping, and receiving future lucrative government contracts.  This made the loss of a desirable thing if there is failure to comply with forced

Sean T. Picee
PO Box 9061
Anch. AK, 99517
(907) 887-9105
sspice6@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
2 and clause 4; Amend. XIV, sec. I

Case 3:22-cv-00176-JMK   Document 1   Filed 07/28/22   Page 17 of 32

inquiry: coercive. And it just was not the loss of something desirable; the Court determined that it was the loss of economic livelihood. The state claimed state employees could not be subject in this manner, because their livelihood was wholly dependent on the state, and contractors were not so dependent (they also sought contract work in the private sector, and therefore supplementary incomes), therefore they were not "compelled."

The Court struck this down, stating: "We fail to see a difference of constitutional magnitude between the threat of job loss to an employee of the State, and a threat of loss of contracts to a contractor."[33] "They then correlated it with: "The waiver sought by the State, under threat of loss of contracts, would have been no less compelled than a direct request for the testimony without resort to the waiver device. A waiver secured under threat of substantial economic sanction cannot be termed voluntary."[34] Whereas, in the case of the sex offender registry, it is not a thing to be desired; nevertheless, we are not talking just loss of economic livelihood (which will happen in the event of incarceration); we are talking prison, which is magnitudes worse than loss of economic support. Therefore, commensurate with *Turely*, statements (communicative action) obtained by threat of prosecution under AS 11.56.835 and .840, without protection, without warning: are coerced and are not voluntary. The thing that harmonizes the instant situation and *Turley*, is coercion.

That means AS 11.56.835 and .840 are unconstitutional according to this case law, which is good and controlling law. Because: the state is mandating; under threat no less; that persons participate in the registry; were the state is constructively making waiver of the right against self-incrimination mandatory; by coercion by threat of prosecution and incarceration if the forms are not filled out and submitted; and then using the documents as confessional evidence in a prosecution. Plus, the forms and their information are compelled through virtual custodial interrogation, without warning or that they have been and will be used against them in a court of law, in violation of *Miranda*.[35] The fact is, as persons alleged to have too register fills out forms and submits them; they accumulate and they are available to the state in the event the state feels it has actionable evidence of violation of AS 12.63.10.

Saying persons who fill out these forms are not under any "hazard, while simply filling out forms when triggering events happen, because they are not being restrained in the "classic way" at the time, are not entitled to claim the Fifth Amendment: is the same as saying a person only has a Fifth Amendment right if they don't commit crime, where they will not then be subject to more traditional modes of "custodial

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend. XIV, sec. 1

Sean T. Piece
PO Box 9061
Anch. AK. 99517
(907) 887-9105
stpro6@gmail.com

interrogation."[36] This notwithstanding, registrants are in fact undergoing statutory inquiry; through the forms, administrative officials are putting questions to registrants. Officials are requiring them to submit written answers to questions posed on the forms. This falls within the ambit of the Supreme Court's ruling in *Turley*; "This rule [5ᵗʰ Amed.] "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it in future criminal proceedings (Id. at 77, 94)."

Registrants are being threatened with criminal prosecution in they do not waive their Fifth Amendment rights, by virtue of the fact they are not being told they are filling out, and signing and submitting: virtual confessional forms, this is analogous to *Turley*. The State of Alaska is offering no immunity, nor are they informing anyone the forms will be and are being used in [a] court of law against them if they refuse to answer the questions. The fact the state is using them in prosecutions, makes the forms "anything [defendants] might say," being used against them in a court of law. It is also a fact that if these forms exist, and the state moves to charge; they will use them. And, the only remedy a person has then is to file a motion to suppress the documents [statement]. This is tantamount to making a person retroactively beg for their Fifth Amendment rights. And given that no one can guarantee the outcome of motion practice; this is not a constitutional safeguard against self-incrimination consistent with the level of protection <u>guaranteed</u> by the operative legal standing of U.S. Constitution, Amed. V, Sec. 3.

It is only by happen stands plaintiff stumbled upon the case of George Shayne; it is the only reason plaintiff is aware the state is using these forms in prosecutions, and it took a little bit for plaintiff to understand the violation of the right to not be a witness against one's self -that is occurring. It is not up to plaintiff to "discover" the state is using them as "communicative" speech that "will" be used against registrants; it is the duty of the state, as mandated by the relevant cited case law, to inform by the mandated constitutional methods. If a person sits in their own home and fills out the forms, either electronically or physically, and submits the forms; one could argue that this act is an act demonstrating waiver of the right against self-incrimination.

However, the holding in *Miranda* controls: "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."[37] Registrants are not being told the forms are being used against them in a courts of law, therefore, the waiver, if it can be called so, would not be done: "knowingly and intelligently."[38] The state of Alaska enacted AS 11.56.835 and .840, in order to enforce,

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
tmpro4@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. 1

through fear, the submission of the forms that are the subject of this action. It specifically included in 11.56.835 Sub. Sec. (2) (b) for the purpose of coercing registrants in to turning themselves in if they fail to comply with AS 12.63.10; this is made clear where it states:

"In a prosecution under (a)(2) of this section, the fact that the defendant, for a period of at least one year, failed to register as a sex offender or child kidnapper . . . is prima facie evidence that the defendant intended to escape detection or identification and, by escaping detection or identification, to facilitate the person's commission of a sex offense or child kidnapping."

"For a period of at least one year, failed to register;" it is implicit that if a registrant fails to register when alleged to be required to, under the conditions specific in .835(2)(b); then within a year if they turn themselves in to the police and fill out a form backdating to the time when it was required, they will escape the denial of due process-bill of attainder as descried supra, by stopping the clock on this provision; certainly an enticing "carrot." Then, the "confession" form will be used to prosecute them.

This demonstrates the mind-set of the legislature: that registrants have no rights, especially no right to not be a witness against themselves. And it is perfectly willing to act against the veritable oil-tanker's capacity, to hold volumes of case histories, et al other sources, that create a bright line standard that you cannot convert legislative fact into adjudicative facts by fiat. But, the Alaska Legislature has done this. Plaintiff included in this document the discussion of the paradigm of the "aggregate," in order to demonstrate the lengths and breadths it has gone to violate registrant's rights.

In the final analysis, plaintiff abstracts: a registrant who has alleged duty to comply with AS 12.63.10 fails to do so; they are arrested and charged under either one and or the other AS 11.56.835 or .840; the forms they have filled out –both the forms themselves by the act of submitting a device of "communicative" nature— and any information on them is used to demonstrate those statute's mens rea or any other element of the crime (actus reas); and they are convicted and sentenced to prison, if convicted under .835, probably probation and definitely parole.[39]

Thus, registrants are placed in a probation style administrative program; but are subjected to lower standards of due process than actual probation.[40] But, the registrants are never told the forms are being used against them in courts of law. The lack of this knowledge makes the Fifth Amendment self-executing; because registrants are deprived of such information, where if they had it, it would represent a reasonable belief they

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
sapco49@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 2 and clause 4 - Amend. XIV, sec. I

might incriminate themselves if they fill out and submit the forms. Thus they are deprived of the circumstances were it has been held that self-executing right to the Fifth Amendment applies.

This circumstance is so obvious, that plaintiff posits: it satisfies the first and primary of the four elements under *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008) for qualifying for a TRO; encoded at Federal Rule of Civil Procedure 65(B)(1)(A):

1.) The likelihood the plaintiff will succeed on the merits; because the issues are so fundamental grounded. Also, plaintiff believes he has demonstrated, 2.) the potential for irreparable harm if the court does not issue the injunction. Because as stated repeatedly: the forms as they are created create a corpus of singed confessions usable by the state; if this is not restrained; and all previous forms declared as being obtained by both coercion and without prophylactic protection, and therefore not usable as such; as mandated by Miranda et al other cases affirming *Miranda*; and the fact that the state is not informing registrants where clearly they have a duty to do so; is irreparable harm because it means registrants who become defendants have only recourse to filing motions to suppress such "confessions," which is tantamount to requesting retroactive application of the right to not be a witness against one's self, and the possibly of being subjected to the due process violation inherent in the "aggregate;" which in its self is a reversal of the right to be presumed innocent and all connotations therefrom.

Plaintiff posits these conditions make neo-moot, 3.) the balance between the injury the plaintiff seeks to avoid and any hardship the injunction would cause to the defendant. Once again, because of: the magnitude, the scale of and the egregiousness of the violation of fundamental rights; inherent in not informing registrants they are singing confessions; as describe by plaintiff ad nausium; and not being told so; means the state should be shouldered with whatever harm may result by the TRO. The State of Alaska's Attorney General's office is full of bar licensed attorneys; by that fact, they may not claim ignorance of the fact that coercing registrants into filling out these forms, and them using them in prosecutions, and not telling them so: facially violates *Miranda* visa vie the right to not be a witness against oneself.

And 4.), the effect, if any, that the court's ruling will have on the public interest. Abstractly, not granting the TRO by saying people convicted of sex offenders are too dangerous in the balance of things, to be afforded *Miranda*, the Fifth Amendment, and due process of law, and having to request retroactive return of these

Sean T. Price
PO Box 9061
Anch. AK. 99517
(907) 887-9105
seprice@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. 1

rights as described supra: would be kind of like saying the public has an interest in violating the most sacred and fundamental constitutional precepts, in order to implement 12.63.10: "by any means necessary."

By being: placed in this vice between an inability to opt out except under threat of prosecution; criminal prosecution for failure to register in the applicable way; where the police will come and drag you to prison from your own domicile; being subjected to statutory interrogation without prophylactic protection; creates a circumstance where registrants should be considered to be always under custodial interrogation when faced with filling out and submitting forms (signed confessions) in response to triggering events: so that the Fifth Amendment is persistently self-executing in balance with the persisting requirement to fill out signed confessions, to be used as evidence against defendants.

Sean T. Piece
PO Box 9061
Anch, AK, 99517
(907) 887-9105
snpiec6@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. I

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Sean T. Pierce |
| Address | PO Box 90616 |

| | | |
|---|---|---|
| Anchorage | Alaska | 99517 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | United States |
| Telephone Number | (907) 887-9105 |
| E-Mail Address | snprc49@gmail.com |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Alaska Dept. of Public Safety, State Wide Services |
| Job or Title *(if known)* | Defendant is State Agency |
| Address | 5700 E. Tudor Dr. |

| | | |
|---|---|---|
| Anchorage | Alaska | 99507 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | (907) 269-5611 |
| E-Mail Address *(if known)* | Could not find one |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Address | |

| | | |
|---|---|---|
| | | |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☐ Official capacity

Page 2 of 6

Sean T. Pierce
PO Box 9061
Anch. AK, 99517
(907) 887-9105
snprc49@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A. For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 07/28/2022

Signature of Plaintiff

Printed Name of Plaintiff Sean T. Pierce

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. 1

Sean T. Pierce
PO Box 9061
Anch. AK. 99517
(907) 887-9105
sspie4@gmail.com

# End Notes

[1] Nay, veritably declared to be objects possessing indicia of truth, such their probative value is dispositive of any challenge of material fact to the contrary, such that any jurist who substitutes his or her judgment with other parties' proffered instruments-of-facts, and or based upon a judges authority sua sponte: is to blaspheme (requires no answer).

[2] Basic considerations of procedural fairness demand an opportunity to be heard on the propriety of taking judicial notice and the tenor of the matter noticed. *See* Revised Model State Administrative Procedure Act (1961), 9C U.L.A. §10(4) (Supp. 1967).

[3] *United States v. Mentz*, 840 F.2d 315, 322 (6th Cir.1988): [a] trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged; the Sixth Amendment of the Constitution guarantees to a criminal defendant the opportunity for a jury to decide guilt or innocence. See *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). "A necessary corollary is the right to have one's guilt determined only upon proof beyond the jury's reasonable a charged crime [occurred]." *United States v. Mentz*, 840 F.2d 315, 319 (6th Cir.1988); see also *Moore v. United States*, 429 U.S. 20, 22, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976) (per curiam). "[A] judge may not direct a verdict of guilty no matter how conclusive the evidence." *United Bhd. of Carpenters and Joiners v. United States*, 330 U.S. 395, 408

[4] The nexus interplay is that AROV 303(b) authorizes interpolation of 11.56.835(2)(b)'s legislative facts into the trial admixture, and in this way, 11.56.835(2)(b)'s legislatively imagined facts, gain standing as prima-fascia facts. It is clear though analysis under the Cannons of Statutory Interpretation and Construction, the plain meaning- and therefore intent, it is clear the legislature inserted AROV 303 (2)(b) into the framework of AROV 303, in order to create a caveat. In this case, that caveat warns that the legislature intends that 303 (2)(b) be a "catch-all" element such that it can interpolate anything it want into Rule 303; and by doing so, the "anything" is intended to supersede "anything" previously stated as controlling and or mandatory.

And by doing so, the legislature intended to derogate the due/adversarial process as mandatory under AROV 201 and 202. Specifically, the interpolation is meant to create a nexus entanglement with AROV 201 (b): "General Rule. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, by joining AROV 303 (2)(b) and 11.56.835(2)(b), with the effect described, the legislature is attempting to mandate that the presumption in AS 11.56.835(2)(b), is: "(1) generally known within this state [and] (2) [has already been determined] by resort to sources whose accuracy cannot reasonably be questioned [the Alaska Legislature] ." This is the mechanism through which the Alaska Legislature is attempting to transmute legislative facts into adjudicative facts.

[5] Prima Facie Evidence. A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a presumption within the meaning of this rule.

Sean T. Preece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
snprce9@gmail.com

Complaint for Injunctive and Declaratory Relief and Permanent Restraining Order to Stop/Prevent Deprivation of Civil Rights Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I

[6] If a defendant does not call for such a hearing, it is obvious that the legislature's fiat adjudicative evidence introduced by the "aggregate:" will stand as fair-game for jury instruction; in that it constructively implements Rule 303 (a)(1): ". . . if the accused fails to offer evidence to rebut or meet the presumption, the court must instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact . . . ," Plaintiff would appreciate the State of Alaska not insulting his intelligence and legal acumen, by any juvenile attempt at insisting that juries are "fair," "objective," and or are not automatically "prejudiced," nor are they able to "set-aside" their prejudice, and elect "not" to infer that a criminal defendant charged under AS 11.56.840 (2)(b), has engaged in the described conduct –simply because a statute says they were.

[7] *Sandstorm v. State of Montana, 442 U.S. 510, 524 (1979);* A presumption [created by judicial notice] which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

[8] *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)

[9] United States v. United States Gypsum Co., 438 U.S. 422 S.Ct. 2864, 57 L.Ed.2d 854 (1978)

[10] Sandstorm v. State of Montana, 442 U.S. 510, 523 (1979)

[11] *Shayen v. State*, 373 P.3d, 532, 535 (2015)

[12] Ibd. at 535

[13] Ibd. at 536

[14] *Shayen v. State*, Court of Appeals No. 11137 (unpublished opinion) (July 7th, 2016); pursuant to FRAP 32.1(a), plaintiff cites this case not for any suggestion of it being controlling precedent, but for demonstration of its legal and factual reasoning, and the Alaska Court of Appeals' actions in this case. As regards Sec. 32.1 (b), this case is available at the State of Alaska Court System's website, and is publically accessible. Therefore, copies are not required.

[15] The doctrine of fear-based Article III standing for injunctive relief has, and holds the consensus of many scholars, its rooted primarily in two particular cases: *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167 (2000). *Lyons* involved a complaint against the use by the police of a "chokehold" in the course of a traffic stop. *Lyons*, allegedly injured by this chokehold, sought both damages for physical injury and injunctive relief. Lyons predicated his claim to this injunctive relief on his justifiable fear that any contact he has with Los Angeles police officers may result in his being choked and strangled to death and "threatened impairment of."

On review, the Court considered and then denied the claim to injunctive relief because of lack of standing. To show cognizable injury, a plaintiff must, on the particular claim, "show that he 'has sustained or is

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
sırpıe4@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4: Amend. XIV, sec. I

*immediately* in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or *threat of injury* must be 'real and immediate,' not 'conjectural' or 'hypothetical.'" The Court found that the alleged injury was conjectural or speculative, and thus not cognizable (basically the court found that just because one police officer choked him: does not mean another would).

*Laidlaw* involved a suit against *Laidlaw Environmental Service*s for violations of the Clean Water Act. To show injury for standing, members of Friends of the Earth claimed that various harms arose from Laidlaw's discharge of mercury into a river from a wastewater treatment facility that it operated. The Court found that these harms were sufficient to establish injury-in-fact. The Court considered *Lyons* in response to an argument offered by the dissent, namely, that the alleged harms that the plaintiffs asserted constituted no more than subjective apprehension, which, according to *Lyons*, is not cognizable as injury-in-fact. Yet, the Court found that Lyons "does not weigh against standing in this case."

In making this determination, the Court considered *Lyons's* discussion of fear. The Court understood *Lyons* to reject cognizing as injury subjective apprehension about the recurrence of unlawful conduct taking place: "In the footnote from *Lyons* cited by the dissent, we noted that "[t]he reasonableness of *Lyons'* fear is dependent upon the likelihood of a recurrence of the allegedly unlawful conduct,' and that his 'subjective apprehensions' that such a recurrence would even take place were not enough to support standing." The Court went on to qualify its capture of the essence of the case (*Laidlaw*), stating: "[W]e see nothing 'improbable' about the proposition that a company's continuous and pervasive illegal discharges of pollutants into a river would cause nearby residents to curtail their recreational use of that waterway and would subject them to other economic and aesthetic harms."

Plaintiff posits that in the instant situation, the state of Alaska's ongoing unconstitutional activities, as described in the body of this document, is analogous to *Laidlaw's* element of "criminal activity," making dumping mercury into a river a cognizable imminent harm; and there for creates a "case and controversy" for Article III standing, and perfects (at least 90%) plaintiff's claim of fear-based standing. Perhaps "not on all 4's;" but plaintiff believes there is enough connective tissue between these cases and the instant situation to create legal force of standing. This is despite that dumping mercury into a river is an environmental criminal act, and the state's activities are civil violations; the comparison is salient (unless one considers the totality of the circumstances; in that given the number of people involved, including the States Attorney General's office –who may not claim ignorance as previously elucidated— one could view this activity as conspiracy to deprive registrant's civil rights, a criminal offense under 18 U.S. Code § 241?).

Plaintiff will point out his (and as others should be) fear is not because he is involved in any criminal activity; it comes from the fact that: give his expression in this document; he is afraid of invoking his Fifth Amendment right by writing on the forms that he does so; and *his reasonable belief the state would move to* prosecute because it has enough immunity; by the fact that plaintiff's generated forms are in existence; his knowledge that if the state felt they had cause of action they would so act; the fact that he would be

Sean T. Price
PO Box 9061
Anch. AK. 99517
(907) 887-9105
snprice@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. I

presumed innocent; but he would have to file a motion to suppress, retroactively seeking prophylactic protection (and face the lack of guarantee described earlier). And even if he is now not working from a position of a charged defendant; he does not have to tolerate the clearly perceivable violation of rights; as a result of forcing people to fill out the forms, and storing them for a "rainy day" prosecution, without informing them. This is constantly "recurring."

To iterate, if for no other reason, plaintiff has Article III standing by the fact of this paradox: having to fill out forms, and if prosecuted, having to retroactively seek protection; which is exactly tantamount to presuming defendants guilty until proven innocent (constructively by defendants). See *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988) ("[I]n the First Amendment context, [l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected expression." (quoting *Sec'y of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 956–57 (1984).

In this case the book sellers were under threat by the state for prosecution under a statute that made it illegal to display for sale pornographic material where it could be viewed by minors. The sellers claimed it violate their free speech rights. Plaintiff correlates the Court's, in this case, statement of "refrain from constitutionally protected expression," as synonymous with (considered within the case's constitutional context, juxtaposed with the instant situation's) plaintiffs concern over "expressing" his constitutional right to not be a witness against himself, by invoking in the manner described supra, and being arrested for not registering, *Miranda* notwithstanding.

He is not casting dispersions on state prosecutors and accusing them of miscreant behavior, he is just expressing his opinion that it might be pro forma to prosecute in this situation. That is a lesser concern compared to the ultimate concern: as stated before, it is the state that owes the duty to inform the forms may/are be used against a person, in a court of law, because they contain communicative substance. Therefore, plaintiff considers it highly probable that if he invoked as such, it will be held as proof plaintiff knew is rights, and understood the jeopardy in not doing so. The jeopardy being, declaration he did not invoke, was not timely in his invocation, and therefore losses protection of the Fifth Amendment under say *Murphy* et al.

Standing in Plaintiff's case come down to the Supreme Court's holding in *Monsanto Co.* v. *Geertson Seed Farms*, 561 U. S.: "To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." (Quoting: *Whitmore* v. *Arkansas*, 495 U.S. 149, 158. Pp. 8–10). The nexus focal point here is the convergence of "actual or imminent," with plaintiff not proceeding from a position where he is a charged defendant; because there is a temptation to say plaintiff is not reasonably subjected to imminent harm if he just fills out the forms. This puts plaintiff in a constitutional doughnut hole; were he can't claim imminent harm because his

Sean T. Price
PO Box 9061
Anch. AK. 99517
(907) 887-9105
snprice@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Case 3:22-cv-00176-JMK    Document 1    Filed 07/28/22    Page 28 of 32

Article I, clause X Article V, clause
3 and clause 4; Amend. XIV, sec. I

only path to standing is to violate 12.63.10 and become a charge defendant, and his only recourse is to file motions to suppress and spin the wheel on motion practice and hope for the best.

Because at that point, there is not a Federal Court in the Country that would stay a state criminal prosecution under these circumstances. And in reality, the list is pretty short; right to vote (in some states), right to possess a firearm, free right of association, etc. Again, to iterate, the Fifth Amendment is not contingent on people obeying the law; and it cannot be said that claiming the right under these circumstances means a person wants the option open in case they decide to commit a crime, or it is material evidence someone intends to commit a crime: but it is defending a right for the sake of the fact that it is a right. The only Constitutional rights that are contingent in this manner are the ones one loses if one is convicted of crimes, not before. The fact is, plaintiffs' rights are being harmed; and it is "actual."

If there is similarity to any person's intellectual work in this endnote, is as a result of plaintiff using, for efficiency purposes, by cut and paste, the work contained in Brian Calabrese: "Fear-Based Standing: Cognizing an Injury-in-Fact (*68 wash. & lee l. Rev. 1445 (2011)*). If the Court so wished to read the whole article, which is a PhD. candidate level law journal article that is mind warpingley in-depth, here is the link; https://law2.wlu.edu/deptimages/law%20review/68-3n.21Calabrese.pdf

[16] E.g. the "aggregate."

[17] One could say that after committing a crime, failure to turn one's self in and sign a confession is an exercise in "not" being a witness against one's self. In that no one can be punished for failure to turn them-selves in after committing a crime, and not sign a confession; until now.

[18] It [5th Amendment] "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding. Kastigar v. United States, 406 U.S. 441, 444–445 (1971).

[19] In *Selective Service System et al. v. Minnesota Public Interest Research...* 468 u.s. 841 (1984), several defendants, who had not registered with Selective Service, claimed violation of their Fifth Amendment right, when contemplating applying for Federal Financial Aid; The Supreme Court found:

"Although an applicant who registers [with Selective Service] late need not disclose that fact in his application for financial aid, appellants concede that a late registrant must disclose that his action is untimely when he makes a late registration with the Selective Service; the draft registration card must be dated and contain the registrant's date of birth. 32 C.F.R. § 1615.4 (1983). This raises the question whether § 12(f) violates appellees' Fifth Amendment rights because they must register late in order to get aid and thus reveal to the Selective Service the failure to comply timely with the registration law." The Court held: None of these appellees has registered and thus none of them has been confronted with a need to assert a Fifth Amendment privilege when asked to disclose his date of birth. Unlike the architects in Turley, these appellees have not

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
ssprice@gmail.com

been denied the opportunity to register and in no sense have they been disqualified for financial aid "for asserting a constitutional privilege."

The salient part for plaintiff's discussion is where the court held: "However, a person who has not registered clearly is under no compulsion to seek financial aid; if he has not registered, he is simply ineligible for aid. Since a non-registrant is bound to know that his application for federal aid would be denied, he is in no sense under any "compulsion" to seek that aid. He has no reason to make any statement to anyone as to whether or not he has registered." Here the Court justified its claim that appellant's Fifth Amend. right had not been violated, because they had not registered late for school and applied for financial aid; stating that appellants, in order to avoid incriminating themselves, could simply not seek financial aid (opting out of a regulatory system).

[20] "A claim of Fifth Amendment privilege may be asserted if there are 'substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial . . .'" United States v. Drollinger, 80 F.3d 389, 392 (9th Cir.1996) (per curiam) (quoting United States v. Rendahl, 746 F.2d 553, 555 (9th Cir.1984)). "'[A] proper application of this standard requires that the Fifth Amendment be raised in response to specific questions propounded by the investigating body.' " Id. (quoting United States v. Pierce, 561 F.2d 735, 741 (9th Cir.1977)); accord United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir.1995) (per curiam). The privilege is not limited to oral questioning; an individual may refuse to provide documents to an investigative body if the act of production would be testimonial. See, e.g., In re Grand Jury Subpoena, Dated April 18, 2003, 383 F.3d 905, 909 (9th Cir.2004).

[21] 465 U.S. 420 (1984)

[22] Ibd. at 420-421

[23] Ibd. at 421.

[24] "Since Murphy was not physically restrained and could have left the office, any compulsion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator. *Murphy* at 433.

[25] Ibid. at 428.

[26] "These cases, taken together, "stand for the proposition that, in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself." *Murphy* at 427.

[27] The general rule that the privilege must be claimed when self-incrimination is threatened has also been deemed inapplicable in cases where the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and ... compe[l] ... incriminating testimony." *Garner v. United States*, 424 U.S., at 661, 96 S.Ct., at 1186.

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause 3 and clause 4; Amend. XIV, sec. I

Sean T. Piece
PO Box 9061
Anch. AK, 99517
(907) 887-9105
stpiec6@gmail.com

[28] *U.S. v. John Doe*, 104 S.Ct. 1237 (1984), the court held that the act of turning over or producing documents had "communicative" properties (*608), and therefore the act of turning them over, to {the government], would be privileged under the Fifth Amendment if they contained incriminating material (*1244).

[29] Ibd. accord at 611

[30] Not only were the forms themselves used against George Shayen et al others (the act of signing and delivering), but also the content as printed on the form by Shayen: was used. The Appellate court cited that Shayen on a previous form listed his address as "camping by Valley of the Moon Park." The context is, Shayen claimed he did not know that moving [from where he was to where he moved] which was the alleged triggering even that requiring filing the forms. The court cite his previous form as being proof he was aware it was a triggering event, because he filed one previously (based on a tier of fact on point with the move he made which brought about charges for the subsequent even).

The Appellate court specifically stated the State had submitted this form as evidence of knowing, not to impugn Shayen's testimony. This is distinguishable, in that submission of the forms as direct-adjudicative evidence is controlled by the rule governing exceptions to hearsay; submission of evidence to impugn a witness is governed by the rule that states that a witness' testimony may be rebutted by "any instrument." Thus, under *U.S. v. John Doe*, the state coerced oral "communicative information out of Shayen, which Shayen provided in a written confession (the forms), the state used it as direct evidence.

[31] Smith Et Al v. Doe Et Al, 538 U.S. 84 (2003);

[32] Action was brought by licensed architects seeking declaration of unconstitutionality of New York statutes precluding award of government contract to any person who fails to waive immunity or answer questions when called to testify concerning his contract with the state or any of its subdivisions. A three-judge District Court, 342 F.Supp. 544, declared the statutes unconstitutional under the Fourteenth and Fifth Amendments, and the state appealed. The Supreme Court, Mr. Justice White, held that statutes were unconstitutional as violative of privilege against compelled self-incrimination, that waiver sought by state, under threat of loss of contracts, would have been no less compelled than a direct request for the testimony without resort to waiver device and that under a proper accommodation between the interests of the state and the Fifth Amendment the state can require employees or public contractors to respond to inquiries but only if it offers them immunity sufficient to supplant their Fifth Amendment privilege.

[33] *Lefkowitz v. Turley*, 414 U.S. 70, 83 (1973)

[34] Ibd. at 83

[35] A person subjected to questioning by the government may "refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." Lefkowitz v. Turley, 414 U.S. 70, 78, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). This rule "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to

Sean F. Pierce
PO Box 9061
Anch AK, 99517
(907) 887-9105
anprcub@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4: Amend. XIV - sec. 1

criminal responsibility him who gives it" in future criminal proceedings. Id. at 77, 94 S.Ct. 316 (quoting McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924))

[36] Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess. *Miranda v. Arizona*, 384 U.S., at 456-457; Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. *Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966).

[37] Ibd. at 444-45.

[38] *Murphy* at 428; Witnesses who failed to claim the privilege were once said to have "waived" it, but we have recently abandoned this "vague term*," Green v. United States*, 355 U.S. 184, 191, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957), and "made clear that an individual may lose the benefit of the privilege without making a knowing and intelligent waiver." *Garner v. United States*, supra, 424 U.S., at 654, n. 9, 96 S.Ct., at 1182, n. 9.

[39] This situation is interesting in that everyone for the most part, plaintiff included, generated their first registration form because registering under AS 12.63.10 was made a condition of both probation and parole. So, add in to the mixture that the first form a registrant fills out, and therefore is available to be used as evidence in the manner discussed, is under the threat of a parole and or probation violation for not doing so. And as stated before, the rues of due process of those revocation procedures are even lower than the civil jury standard of preponderance. Perhaps not as to the ultimate decision of violation or not; but, it is constructively the same when the evidence presented is introduced under standards far less stringent than at a probation revocation hearing.

[40] Although probation revocation proceeding must comport with requirements of due process, it is not a criminal proceeding, and just as there is no right to jury trial before probation may be revoked, neither is privilege against compelled self-incrimination available to probationer and there is no valid claim of privilege on ground that information sought can be used in revocation proceedings. *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984) (435-437)

Sean T. Piece
PO Box 9061
Anch. AK. 99517
(907) 887-9105
stpiv49@gmail.com

Complaint for Injunctive and Declaratory Relief
and Permanent Restraining Order to
Stop/Prevent Deprivation of Civil Rights
Guaranteed by the Constitution of the United

Article I, clause X Article V, clause
3 and clause 4 - Amend. XIV sec. I